Thomas L. Creel (TC 2186)
Kandis M. Koustenis (KK 4213)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 813-8800
Fax: (212) 355-3333

*Attorneys for Plaintiff The MKR Group, Inc.*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE MKR GROUP, INC.,

        *Plaintiff,*

v.

STRIKE ENTERTAINMENT, INC.,

        *Defendant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUDGE KAPLAN

Civil Action No. 05 CV 767

**COMPLAINT**

Plaintiff The MKR Group, Inc. ("MKR"), for its Complaint against defendant Strike Entertainment, Inc. ("Strike"), alleges as follows:

### THE PARTIES

1.     MKR is a New York corporation with its principal place of business located at 675 Third Avenue, Suite 2521, New York, New York 10017. MKR produces and licenses feature films.

2.     Upon information and belief, Strike is a Delaware corporation with its principal place of business located at 3000 West Olympic Boulevard, Santa Monica, California 90404.

3. Upon information and belief, Strike is regularly doing business in the State of New York, including within this judicial district.

## JURISDICTION AND VENUE

4. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for a declaration of the rights of the parties with respect to an actual controversy concerning whether MKR currently has the right to negotiate with parties other than Strike with respect to the remake or sequel rights to the 1978 motion picture entitled "Dawn of the Dead."

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because MKR and Strike are citizens of different States and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6. This Court has personal jurisdiction over Strike based upon its transaction of business in the State of New York. This Court also has personal jurisdiction over Strike based upon the fact that a substantial part of the events giving rise to MKR's claims occurred in the State of New York and the property that is the subject of this action is located in and controlled from the State of New York.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(a) and (c) because, upon information and belief, Strike is subject to personal jurisdiction in this judicial district, a substantial part of the events giving rise to MKR's claims occurred in this judicial district, and the property that is the subject of this action is located in and controlled from this judicial district.

## FACTUAL ALLEGATIONS

8.  MKR is the owner of the rights, including copyright, to the 1978 motion picture entitled "Dawn of the Dead" produced by Richard P. Rubinstein and directed by George A. Romero, as well as the underlying original screenplay written by George A. Romero as a work for hire (collectively, the "Original Motion Picture").

9.  Richard P. Rubinstein is the President of MKR.

10. On March 4, 2003, MKR and Strike executed an option and rights agreement by which MKR granted Strike the right to develop, produce, distribute, exploit, advertise and publicize a single motion picture remake based upon or adapted from the Original Motion Picture (the "Agreement").

11. On or about June 10, 2003, Strike exercised its option under the Agreement and Universal Studios later released a motion picture remake of the Original Motion Picture (the "Remake") on or about March 19, 2004 (the "Release Date"). The Remake was released in 2,500 theaters and earned worldwide gross revenues of approximately $100 million.

12. Paragraph 7 of the Agreement provides that negotiation with MKR for rights to the next sequel or remake of the Original Motion Picture may be commenced by either MKR or Strike. Paragraph 7 further provides that Strike shall enjoy an exclusive right of first negotiation for rights to the next sequel or remake of the Original Motion Picture for a period of sixty days from commencement of negotiation by either party "with a right thereafter to match any bona fide third party offer within 110% of Strike's *last offer*." (emphasis added).

13. Paragraph 6 of the Agreement provides that for a period of four years from the Release Date, MKR shall "holdback" from exploiting its reserved rights (defined in Paragraph 5 of the Agreement), which includes, among other things, subsequent sequels or remakes of the Original Motion Picture.

14. Pursuant to Paragraph 7's right of first negotiation, on August 2, 2004, MKR sent to Strike a proposal of terms for a sequel to the Original Motion Picture (the "Proposal").

15. Strike did not respond to MKR's Proposal. Rather, it sent a letter to MKR in which Strike stated that it was taking MKR's Proposal "under advisement." Strike further stated:

> In the meantime, please be advised that you may not sell, license or otherwise dispose of such rights during the holdback period of four years from release of the picture (i.e. until March 19, 2008).

(A copy of the September 30, 2004 Letter is attached as Exhibit A).

16. Because Strike did not respond with an acceptance or counteroffer to MKR's Proposal by the sixty-day cut-off date of October 1, 2004, Strike's right of first negotiation and subsequent matching right expired on that date.

17. Contrary to Strike's assertions in its September 30, 2004 letter, the Agreement does not provide a blanket prohibition against MKR's selling, licensing or otherwise disposing of sequel/remake rights during the holdback period of Paragraph 6.

18. Such an interpretation of the Agreement is inconsistent with the first negotiation period of Paragraph 7 which permits Strike, once it has provided its offer within the sixty-day first negotiation right period, to "match any bona fide *third party offer* within 110% of Strike's last offer." (Agreement ¶ 7) (emphasis added). The provisions of Paragraph 7 are premised on

4

MKR's ability to negotiate a sale, license or other disposal of sequel/remake rights with any third party so long as MKR complies with Strike's first negotiation and matching rights.

19. Under the terms of Paragraph 7, once Strike permitted the sixty-day first negotiation period to expire on October 1, 2004, MKR became free to sell, license or otherwise dispose of further sequel/remake rights to the Original Motion Picture.

20. When properly read in conjunction with the provisions of Paragraph 7, the holdback period of Paragraph 6 simply provides that no subsequent sequel or remake of the Original Motion Picture shall be exhibited prior to the end of the holdback period, i.e., March 19, 2008. Paragraph 6 does not prohibit MKR from negotiating with third parties with respect to sequel or remake rights so long as MKR complies with the terms of Paragraph 7's first negotiation and matching rights, which have now expired.

## COUNT I
### (Declaratory Judgment)

21. MKR realleges and incorporates herein the allegations set forth in paragraphs 1 through 20 of this Complaint.

22. An actual controversy exists between the parties regarding the interpretation and application of Paragraphs 5, 6 and 7 of the Agreement as they apply to sequel or remake rights.

23. Strike has asserted that MKR may not sell, license or otherwise dispose of its sequel or remake rights to the Original Motion Picture during the period of four years from the Release Date of Strike's remake, i.e., until March 19, 2008. Strike's interpretation of the Agreement effectively prevents MKR from negotiating at all with respect to sequel or remake

5

rights during the holdback period and effectively extends that holdback period far beyond the period of time contemplated by the parties.

24. MKR disagrees with Strike's interpretation of the Agreement and claims that the proper interpretation of the Agreement is as set forth above in Paragraphs 12 through 20 of this Complaint.

25. MKR is entitled to a judicial declaration that it is currently permitted under Paragraphs 5, 6 and 7 of the Agreement to negotiate with any third party for the sequel or remake rights to the Original Motion Picture so long as no subsequent sequel or remake of the Original Motion Picture shall be exhibited prior to the end of the holdback period of Paragraph 6, namely, four years from the Release Date (i.e., March 19, 2008).

WHEREFORE, MKR respectfully requests that the Court enter judgment in its favor and against Strike and grant the following relief:

(a) a declaration that MKR currently is entitled to negotiate and produce the sequel or remake rights to the Original Motion Picture with any party and without further obligation to provide Strike with matching rights, so long as no subsequent sequel or remake of the Original Motion Picture shall be exhibited prior to the end of the holdback period of Paragraph 6, namely, four years from the Release Date, i.e., March 19, 2008;

(b) a declaration that Strike's first negotiation and matching rights with respect to any sequel or remake to the Original Motion Picture expired on October 1, 2004;

(c) an award of MKR's costs and attorneys' fees; and

(d)  such other and further relief as this Court deems just and proper.

Dated: January 21, 2005

Respectfully submitted,

By: _____
Thomas L. Creel (TC 2186)
Kandis M. Koustenis (KK 4213)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 813-8800
Fax: (212) 355-3333

*Attorneys for Plaintiff The MKR Group, Inc.*

# EXHIBIT A

09/30/2004  12:05    3103150560              STRIKE                              PAGE  01



VIA FACSIMILE

September 30, 2004

Stephen F. Breimer, Esq.
Bloom, Hergott & Diemer, LLP
150 S. Rodeo Dr.
3rd Floor
Beverly Hills, CA 90212

Re:   "Dawn of the Dead" / Sequel Rights

Dear Stephen:

I am in receipt of your letter to Tom Bliss dated August 2, 2004 in connection with the above-referenced project. Thank you for your proposal, which we are taking under advisement.

In the meantime, pleased be advised that you may not sell, license or otherwise dispose of such rights during the holdback period of four years from release of the picture (i.e. until March 19, 2008).

Best regards,

Phil Altmann

cc:   Tom Bliss
      Masako Ichino

3000 west olympic boulevard   santa monica, california  90404   p.310.315.0550  f.310.315.0560